United States District Court
Middle District of Florida
Jacksonville Division

UNITED STATES OF AMERICA,

 *Plaintiff,*

v.                  NO. 3:10-cr-54-J-34PDB

BARBARA ANN WINTON,

 *Defendant.*

---

## Report & Recommendation on Pending Pro Se Motions

Before the Court are seven pro se motions by Barbara Winton: **(1)** "combined motions," Doc. 83; **(2)** "motion for a mistrial and a reopening on my case appeal under different counsel, district and grounds," Doc. 91; **(3)** "motion coupling motions #N1/1, 2 and 3 and additional mailing request per hardship," Doc. 92; **(4)** "motion to revisit and expound on/add to; previous 'coupled' motions to declare a mistrial due reasons given, and a default of previous lawyer appointment; and to compel court judge/district to grant all my requests immediately," Doc. 95; **(5)** "motion to appoint counsel and relief of financial obligations on all matters of my case; pursuant to appointed individual," Doc. 96; **(6)** "motion of redress of grievances, to support my 3 prior and current motions for a mistrial," Doc. 96; and **(7)** "motion to keep approved motions; and all pending motions; active and to proceed in pro se form," Doc. 103. Within most of the motions are several different requests. I recommend granting one of the requests and denying the rest.

## Background

*1.    Prior Case (No. 5:01-cr-25)*

In 2001, a federal grand jury returned an indictment charging Ms. Winton with using a telephone to threaten to blow up the federal building and courthouse in Ocala. Doc. 7. At the outset, the Court ordered her to undergo a competency examination. Doc. 9. Dr. Robert Kirkland testified that she is chronically psychotic, has bipolar disorder, and was not competent but had a reasonable chance of becoming competent with treatment and medication. Doc. 23 at 1–2. The Court found that she was incompetent and committed her to the United States Attorney General's custody. Doc. 23. Following a later competency finding, Docs. 29, 31, she pleaded guilty, and the Court accepted her plea, adjudicated her guilty, and sentenced her to serve 18 months in prison, to be followed by 3 years of supervised release under standard conditions, Doc. 42.

Soon after Ms. Winton's supervised-release term began, the Court modified her conditions to require her to reside in a community correctional center for 120 days, receive mental-health treatment, and participate in an alcohol/drug-dependency program. Doc. 45. As cause for the modification, the petition stated:

> Ms. Winton has documented emotional concerns as well as a history of substance abuse. If she does not receive proper mental health treatment or medication during her period of supervision, there is a very likely chance that she will once again present a threat of potential violent behavior. In addition, she has no legal residence, and her family does not want to deal with her. As such, Ms. Winton needs time to secure an adequate residence and gain legitimate employment. The recommendation for community confinement with mental health and substance abuse treatment will enable this officer to properly see that Ms. Winton is stabilized before she fully returns to the community.

*Id.* at 2.

Toward the end of Ms. Winton's supervised-release term, the probation office petitioned for revocation based on allegations that she had possessed marijuana and drug paraphernalia and had sent threatening letters to the President of the United States and an FBI Special Agent. Doc. 46. Having learned that Ms. Winton had been "Baker Acted" following an attempt to commit suicide by drug overdose, and upon defense counsel's request, the Court ordered her to undergo a competency evaluation. Docs. 50, 56. In a request for her release, her counsel explained that she had become depressed because of inappropriate conduct by her supervising probation officer and inappropriate prescriptions by a psychiatrist. Doc. 57.

In a report to the Court, Dr. Chowallur Chacko opined that Ms. Winton had bipolar disorder but was competent. Doc. 75. Based on that opinion, the parties' stipulation, and the Court's observations, the Court found her competent. Docs. 72, 75. Concluding that she had violated her conditions as alleged, the Court revoked her supervised release and sentenced her to one year in prison, with no supervised release to follow. Doc. 82. The Court recommended that she "receive mental and psychological counseling and/or treatment as well as substance abuse treatment" while incarcerated. *Id.* at 2. Ms. Winton filed a pro se notice of appeal of the revocation, Doc. 84, but later voluntarily dismissed the appeal, Doc. 87. She completed that prison term in February 2006.

*2.   Current Case (No. 3:10-cr-54)*

In 2007, Ms. Winton threatened to detonate a bomb at the Jacksonville International Airport. Doc. 33 at 3. Dr. Devyani Desai diagnosed her with post-traumatic-stress, bipolar, and delusional disorders, opined that she had been suffering from diminished capacity when she made the threat, and observed that she had been in in-patient care both before and after the threat. Doc. 47 at 3.

In 2010, based on that latest bomb threat, a federal grand jury returned another indictment against her. Doc. 1. The Court allowed her to remain at liberty under conditions that included submitting to a mental-health evaluation and continuing to undergo medical or psychiatric treatment as needed and as directed by her pretrial services officer. Doc. 16 at 2–3. Upon a government motion, the Court also ordered her to submit to a competency evaluation. Docs. 9, 11. In a report to the Court, Dr. Alan Harris opined that Ms. Winton is competent but that she needed to "remain on psychiatric medication." Doc. 26 at 8. Dr. Harris added, "[i]t is unfortunate that a common difficulty with individuals who have bipolar disorder is repeated noncompliance. That is, they discontinue medication on their own, followed by a rapid decline of functioning. Substance-abuse counseling is also recommended." *Id.* Based on that opinion and the parties' stipulation, the Court found her competent. Doc. 27.

Ms. Winton pleaded guilty without a plea agreement, and the Court accepted her plea and adjudicated her guilty. Docs. 33–35. In an August 12, 2010, allocution letter, she stated that she had been receiving psychological treatment and voluntarily going to Alcoholics Anonymous, Narcotics Anonymous, drug counseling, and

4

individual counseling. Doc. 47-5. She added, "I have learned that I need to attend my counseling, meetings; and continue my medical treatment to stay better, to thrive as a person of society, my community, my family and in my personal life." *Id.*

In March 2011, the Court sentenced Ms. Winton to 36 months in prison, to be followed by one year of supervised release with special conditions that she obtain mental-health treatment and participate in a substance-abuse program, both as directed by her probation officer. Docs. 48, 49 at 2. The Court also recommended that the Bureau of Prisons expedite its efforts "to continue [her] on her medications" and allow her to participate in mental-health treatment and in any substance-abuse program for which she was eligible. Docs. 48, 49 at 2.

Toward the end of her prison term, after the periods for filing a direct appeal or motion for collateral relief, Ms. Winton filed several pro se motions. In February 2013, she filed a motion to dismiss court-appointed trial counsel and appoint her to represent herself. Doc. 53. She did not state a reason for that request. *See generally id.* Also in February 2013, she filed a motion to "dismiss" the district judge and change venue based on alleged discrimination, bias, and refusal to allow her to present evidence at her sentencing hearing. Doc. 54. The Court terminated both motions because the case was closed. *See* docket entry following Doc. 54.

The next month, in March 2013, Ms. Winton filed three pro se motions. Docs. 55–57. In them, she asked for an extension of time "on all court matters" due to financial hardship; permission to correspond directly with the district judge due to the sensitive nature of her claims; the admission of all previously sent correspondence

5

as evidence; leave to file 200 extra pages with a 28 U.S.C. § 2255 motion; clemency due to alleged constitutional violations relating to her arrest, prosecution, and conviction; leave to proceed in forma pauperis; early release due to alleged suffering caused by "extreme institutional staff" and the need to care for her family; and suspension of her supervised-release term due to conditions with which she could not comply because of her limited finances and means of transportation. Docs. 55–57. The Court denied the motions because she had not cited any legal authority or identified any bases for the requested relief. Doc. 58.

In July 2013, Ms. Winton filed another pro se motion requesting the same relief as well as a modification of her supervised-release conditions to omit the requirement that she participate in mental-health treatment, counseling, or self-help programs. Doc. 59. She contended that her lifelong Christian belief in divine healing prohibited her from taking medication or participating in secular counseling or self-help groups, and, further, that her refusal to do so since July 2012 had not caused any adverse consequences. *Id.* at 4–5. She complained that she had asked her court-appointed trial counsel to present those matters at her sentencing hearing but he had refused to do so. *Id.* at 5–6. The Court denied the motion because, again, she had not cited any legal authority or identified any bases for the requested relief. Doc. 60.

From August 2013 to December 2013, Ms. Winton filed 13 more pro se motions in which she repeatedly renewed her prior requests. Docs. 61–74. She elaborated that medication would cause her to again become unstable and reoffend and asked the Court to appoint counsel to help with her request to modify her supervised-release

conditions. Docs. 65, 67. She made other new requests as well: to stay her supervised-release term pending a decision on her outstanding motions; to change venue due to her dire financial condition and alleged discrimination in Jacksonville; for an evidentiary hearing in the new venue; to give her all of the evidence used to prosecute her; to give her copies of everything that she had filed with the clerk's office; and to suppress all "past evidence" due to alleged discrimination, ineffective assistance of counsel, and withholding of evidence. Docs. 68–70, 72–74.

Ms. Winton finished her prison term on December 6, 2013. Doc. 75 at 2. On January 23, 2014, the Court entered an order on all of her outstanding motions. Doc. 75. The Court denied all of her requests except for her request for appointment of counsel and for modification of her supervised-release terms. Doc. 75. The Court referred to me her former request and explained that, once that had been resolved, it would consider her later request. *Id.* at 3–4.

In response, Ms. Winton filed six more motions in which she repeated her previous requests and added a request for financial assistance to help her pay for court costs. Docs. 76–80. At a February 14, 2014, hearing on her motion to appoint counsel, she agreed to withdraw all pending motions except for her "combined motion" (Doc. 83) subject to refiling through counsel as warranted. Docs. 84, 87. The Court appointed Russell Smith, Esquire, to represent her "for the limited purpose of assisting her with her concerns about her supervised-release conditions." Doc. 86.

Less than one month after Mr. Smith's appointment, Ms. Winton filed a motion asking the Court to dismiss Mr. Smith and appoint new counsel, explaining that she

had filed a bar complaint against him based on her belief that he was prejudiced against her because of her religious beliefs. Doc. 89. She also asked for permission to file motions by e-mail because of her financial condition. Doc. 92 at 3. The Court permitted Mr. Smith to withdraw but denied her request for new counsel without prejudice to the appointment of new counsel if the probation office initiated revocation proceedings. Doc. 94 at 1. The Court denied outright her request to file motions by e-mail. *Id.*

## Pending Matters

After the Court allowed Mr. Smith to withdraw, the probation office petitioned for a summons for Ms. Winton to appear to respond to allegations that she has violated her supervised-release conditions by failing to (1) report for her substance-abuse-treatment appointment at the Lifestream Behavioral Center on April 25, 2014, (2) report for her mental-health-treatment appointment at the same time and place; and (3) follow her probation officer's instructions to attend those appointments, Doc. 97. The Court granted the petition, *id.*, and her probation officer personally served her with the resulting summons commanding her to appear before the Court on May 28, 2014, at 10:00 a.m. Doc. 99. Without prior permission but believing that she could appear by telephone as she had done with prior permission for a hearing on her motion to appoint counsel, Doc. 81, and on her motion to dismiss Mr. Smith as counsel, Doc. 90, she responded to the summons by telephoning chambers at that time, Doc. 100. The Court informed her that she had to appear in person and, to give her sufficient time to arrange travel, ordered the clerk to issue another summons

commanding her to appear before the Court on June 11, 2014, at 1:00 p.m. Doc. 101.

According to the May 5, 2014, memorandum from the probation office to the Court concerning its petition to issue a summons and begin revocation proceedings, Ms. Winton has complied with other conditions of her release, including testing negative for illegal drugs since her release and trying to find work.

Seven pro se motions by Ms. Winton remain pending. Docs. 83, 91, 92, 95, 96 (two motions), 103. In most of them, she complains about the time it has taken to decide her motions, articulates her related frustration over how the case has proceeded, and claims retaliation or other mistreatment by almost everyone involved in her case (including the probation office and the Court). As to the particular relief she requests in them, my recommendations follow.[1]

## Recommendations

### 1. *Request to Not Limit Objections to Supervised-Release Conditions*

Ms. Winton asks the Court to not limit to her religious views her objections to her supervised-release conditions so that she can add that medication adversely

---

[1] In both her latest motion and a previous one, Ms. Winton asks the Court to allow her to represent herself, pointing out that, with the exception of Mr. Smith's brief appearance, she has represented herself since her conviction became final. Doc. 96 at 1−2; Doc. 103 at 5−6. I will address that request with Ms. Winton when she appears on June 11 in response to the latest summons. In the same request, she asks me to consider transferring the case to another magistrate judge based on a statement I made when she responded to the summons by telephoning chambers that I could not assess her competency to understand the proceedings if she was not in the courtroom. Doc. 103 at 4. She contends that I made the statement to retaliate against her because she has lodged with the Eleventh Circuit Court of Appeals many complaints about the Court. *Id.* at 4. That motion having been referred and deeming it a non-dispositive recusal motion, I will address it in a separate order.

affects her and may cause her to reoffend. Doc. 83 at 1–2; Doc. 92 at 1–3. For that perceived limitation, she points to the Court's order deferring her motion to modify her supervised-release conditions "with respect to the sole issue of whether the mental health treatment requirement should be eliminated from the supervision requirements." Doc. 75 at 3. In that order, the Court stated that the United States should respond, and the probation office should have an opportunity to respond, to her allegation that participating in mental-health treatment would require her to violate her religious beliefs. *Id.* Although I do not read the Court's order in the same narrow way that Ms. Winton does, I recommend **granting** her request to the extent that the Court clarify that, in arguing that the Court should modify her conditions or decline to revoke her supervised release, she is not prohibited from asserting that medication adversely affects her and may cause her to reoffend.

## 2. *Request to Exclude Various Probation Officers from Proceedings*

Claiming retaliation for filing grievances against them, Ms. Winton asks the Court to exclude from all court proceedings and any decisions in the case the assigned probation officer, the chief probation officer, and all supervisory probation officers. Doc. 83 at 5–6. I recommend **denying** her request because she has not offered any evidence of retaliation and none is apparent. To the extent that any probation officer makes a recommendation to the Court, she remains free to argue why the Court should not follow it.

## 3. *Request to Change Venue*

Claiming that she cannot get a fair hearing in Jacksonville or Ocala, Ms.

Winton asks the Court to transfer venue to another division. Doc. 83 at 7–8. The Court summarily denied her previous venue-change request that she had based on similarly asserted "discrimination in the Jacksonville area" as well as financial inability to travel. Doc. 72 at 1; Doc. 75 at 4. I recommend **denying** her most recent venue-change request because she has not offered any evidence of unfairness and none is apparent. That the Court has ruled against her on many occasions does not amount to unfairness.

*4.  Request to Pay Transportation Costs to Court Hearings or Leave to Attend by Telephone*

Ms. Winton asks the Court to pay for her transportation to all court hearings or allow her to attend by telephone based on her financial inability to travel. Doc. 83 at 8−9; Doc. 103 at 6. A financial affidavit that she recently submitted confirms that she is indigent; she has not worked since 1994, receives only $189 a month in food stamps, has very little cash, has no or few assets, relies on her family for help, and walks or bicycles to get places. Doc. 85. As indicated above, to address this issue, I allowed her to appear by telephone for a hearing on her motions to appoint counsel, Doc. 81, and to dismiss Mr. Smith as counsel, Doc. 90, but, to adequately assess her ability to understand, not for her initial appearance on the probation office's violation petition, Doc. 101.

Under 18 U.S.C. § 4285, if a court orders a defendant released on the condition that she appear before the court, the court may, in the interest of justice and after appropriate financial inquiry, direct the United States Marshal "to arrange for that person's means of noncustodial transportation to the place where his appearance is

11

required" and provide subsistence expenses not to exceed the per diem allowance for travel authorized by 5 U.S.C. § 5702(a). By its plain language, section 4285 allows payment only for one-way travel. *United States v. Centeno*, No. 09CR3120-L, 2009 WL 3334144, at *1 (S.D. Cal. 2009) (unpublished) (citing cases). I recommend **denying** Ms. Winton's request without prejudice to allowing her to request free, noncustodial, one-way transportation under section 4285 if I order her released pending her final revocation hearing on the condition that she appear for that hearing or, for other hearings at which her presence is not required, to request advance permission to attend by telephone.

5. *Request to Revisit Conviction*

Ms. Winton asks the Court to revisit her conviction by declaring a mistrial, suppressing evidence against her, and allowing her to present new evidence because "case officials" falsified documents, withheld evidence, presented false testimony, and lied to the Court to manipulate its decisions. Doc. 83 at 9–12; Doc. 91 at 1–2; Doc. 92 at 1–3; Doc. 95 at 11–12; Doc. 96 at 3–4. As the Court has done with her previous requests to revisit her conviction, *see* Docs. 58, 60, 75, I recommend **denying** her most recent requests to revisit her conviction because she has not provided any authority or otherwise identified any basis for that relief.[2]

---

[2]Ms. Winton's failure to provide any authority or otherwise identify any basis to revisit her conviction is a sufficient reason alone to deny her request. As another reason, after providing her with a *Castro* warning, *see Gooden v. United States*, 627 F.3d 846, 848 (11th Cir. 2010) (court must warn movant about second-or-successive restrictions before recharacterizing motion as untimely 28 U.S.C. § 2255 motion), the Court could construe her request as a section 2255 motion and deny it as both untimely under the pertinent one-year-from-date-of-judgment-limitation provision,

## 6. *Request to Immediately Modify Supervised-Release Conditions*

Ms. Winton asks the Court to immediately modify her supervised-release conditions by revoking the special conditions that she obtain mental-health treatment and participate in a substance-abuse program. Doc. 91 at 1–2; Doc. 92 at 1–3; Doc. 95 at 11–12; Doc. 96 at 3–4. As indicated above, Ms. Winton's request is based on both her asserted religious belief in divine over secular healing and her contention that psychotropic medications adversely affect her. *Id.* The Court previously took under advisement her modification request pending a response from the United States (which it has not yet filed), an opportunity for the probation office to respond, and possible appointment of counsel. Doc. 75 at 3–4.

In *United States v. Jefferson*, the court considered a religious-based challenge to a supervised-release condition at the revocation hearing. 175 F. Supp. 2d 1123, 1125 (N.D. Ind. 2001). To receive any necessary evidence on the issues and otherwise be fully advised on them, I recommend **denying** the expedited-disposition request in favor of deferring ruling until the final revocation hearing, **requiring** the United States to respond to the request by a date certain beforehand, and **allowing** Ms. Winton or any counsel appointed to represent her in the revocation proceedings to reply to the response.[3]

---

*see* 28 U.S.C. § 2255(f)(1), and as procedurally defaulted under the requirement that a defendant raise all available claims in a direct appeal, *see Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

[3]In addition to *Jefferson*, cases addressing whether a probation or supervised-release condition violates the First Amendment's Establishment Clause or the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb−1 include *United States v. Lafley*, 656 F.3d 936, 939–42 (9th Cir. 2011), *United States v. Israel*, 317 F.3d 786,

*7.     Request to Add Documents to Record*

To demonstrate her ability to represent herself and ensure that the record is complete, Ms. Winton asks the Court to add to the record all motions, letters, and attachments that she has submitted to the probation office and any other court personnel. Doc. 103 at 1–3. I recommend **denying** her request because she has not identified those submissions in a way that would allow the Court to determine whether they should be part of the record or are already in the record.

*8.     Other Requests*

I have endeavored to understand and address all of Ms. Winton's pending motions—a difficult task in light of their number, length, and longhand form. To the extent that I have not addressed any additional requests that she intended to make, I recommend **denying** them as not clearly raised or adequately argued.

**Recommendation**

Thus, I recommend that the Court **grant in part** Ms. Winton's "combined motions," Doc. 83 at 1–2, and "motion coupling motions #N1/1, 2 and 3 and additional mailing request per hardship," Doc. 92 at 1–3, and **deny** the remaining requests, Docs. 83, 91, 92, 95, 96, 103, as follows:

1.     **Grant** Ms. Winton's request to not limit her objections to her supervised-release conditions to her religious views so that she can argue that medication adversely affects her, Doc. 83 at 1–2; Doc. 92 at 1–3, to the extent that the Court clarify that, in arguing that the Court should modify her conditions or decline to revoke her supervised release, she is not prohibited from asserting that medication adversely affects her and may cause her to reoffend.

---

770–72 (7th Cir. 2003), *Owens v. Kelley*, 681 F.2d 1362, 1365–66 (11th Cir. 1982), and *Yahweh v. U.S. Parole Comm'n*, 158 F. Supp. 2d 1332, 1344–53 (S.D. Fla. 2001).

14

2.  **Deny** Ms. Winton's request to exclude from all court proceedings and any decisions in the case the assigned probation officer, the chief probation officer, and all supervisory probation officers, Doc. 83 at 5–6.

3.  **Deny** Ms. Winton's request to transfer venue, Doc. 83 at 7–8.

4.  **Deny** Ms. Winton's request to pay transportation costs to court hearings or allow her to attend by telephone, Doc. 83 at 8−9; Doc. 103 at 6, but without prejudice to her moving for that type of relief on a hearing-by-hearing basis.

5.  **Deny** Ms. Winton's request to revisit her conviction by declaring a mistrial, suppressing evidence, and allowing her to present new evidence about the crime of conviction, Doc. 83 at 9–12; Doc. 91; Doc. 92 at 1−3; Doc. 95 at 11−12; Doc. 96 at 3−4.

6.  **Deny** Ms. Winton's request to immediately modify her supervised-release conditions by revoking the special conditions that she obtain mental-health treatment and participate in a substance-abuse program, Doc. 92 at 1−3; Doc. 95 at 11−12, and defer ruling on the modification request until the final revocation hearing.

7.  **Order** the United States to respond to Ms. Winton's request to modify her supervised-release conditions by a date certain before the final revocation hearing.

8.  **Deny** Ms. Winton's request to add to the record all motions, letters, and attachments that she has submitted to the probation office and any other court personnel, Doc. 103 at 1−3.

9.  **Deny** any additional requests that Ms. Winton intended to make in the pending motions, Docs. 83, 91, 92, 95, 96, 103, that have not already been decided in other orders except for her request to modify her supervised-release conditions that the Court may consider at the final revocation hearing and the two remaining non-dispositive requests to represent herself and to consider recusing myself that I will separately address.[4]

---

[4] Either party may file and serve specific written objections to this report and recommendation within 14 days of service. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 6.02(a). Failure to do so may alter the scope of direct and appellate review. *See* Fed.

**Entered** in Jacksonville, Florida, on June 10, 2014.

                                              PATRICIA D. BARKSDALE
                                              *United States Magistrate Judge*

c:      The Honorable Marcia Morales Howard
        Counsel of Record
        Barbara Ann Winton

---

R. Civ. P. 72(b)(3); *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013).

16